IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ERIC TYROME PITTS, § | |
| Plaintiff, § | |
| § | |
| § | Civil Action No. 3:19-CV-1539-BH |
| § | |
| ANDREW SAUL, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| Defendant. § | Consent Case[1] |

**MEMORANDUM OPINION AND ORDER**

Eric Tyrome Pitts (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under Titles II of the Social Security Act. (*See* docs. 1, 20.) Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

On January 5, 2017, Plaintiff filed his application for DIB, alleging disability beginning on April 4, 2016. (doc. 12-1 at 163.)[2] His claim was denied initially on December 16, 2016, and upon reconsideration on March 15, 2017. (*Id.* at 75, 153). On May 2, 2017, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 97.) He appeared and testified at a hearing on April 12, 2018. (*Id.* at 43-65.) On October 11, 2018, the ALJ issued a decision finding him not disabled. (*Id.* at 22-31.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council on October 16, 2018. (*Id.* at 22-30, 216.) The Appeals Council denied his request for review on April 27, 2019,

---

[1] By consent of the parties and the order of transfer dated October 18, 2019 (doc. 17), this case has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-7.) He timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

A.     **Age, Education, and Work Experience**

Plaintiff was born on November 9, 1971, and was 46 years old at the time of the hearing. (doc. 12-1 at 50-51.) He graduated high school and had past relevant work experience as a cleaner. (*See id.* at 51-52.)

B.     **Medical Evidence**

On April 4, 2016, Plaintiff went to the emergency room at Hunt Regional Medical Center moderate pain in the lower lumbar spine with no radiation after injuring his back at work by trying to pull apart three 150 lb rods that were stuck in a machine. (*Id.* at 341-45.) Physical exam revealed normal range of motion in his extremities, normal reflexes, and moderate vertebral point tenderness over the upper lumbar spine. (*Id.* at 342.) X-rays showed minimal osteophyte formation and facet arthritis, and no evidence of acute fracture or dislocation. (*Id.* at 342, 344.) Plaintiff was prescribed Robaxin and Tylenol with Codeine and discharged with instructions to follow up with a doctor for his workman's compensation claim. (*Id.* at 343.)

From May 2016 through July 2016, Plaintiff saw Anthony Berg, M.D., at the Spine Team of Texas. (*Id.* at 357-395.) He reported severe back pain that was burning, sharp, achy, and constant and exacerbated by bending, twisting, walking, and lifting. (*Id.* at 389.) His MRI revealed a 2 millimeter L5 retrolisthesis on S1, an annular fissure that mildly narrowed with the left subarticular recess, and mild to moderate degenerative disc disease at L5-S1. (*Id.* at 392.) After physical therapy did not yield any improvement, Dr. Berg recommended that Plaintiff receive an epidural steroid injection to allow him to continue physical therapy, and advised that there were no "more aggressive treatments such as surgery for his problem[.]" (*Id.* at 371, 374.)

On July 28, 2016, Plaintiff saw Richard Channing, D.C., for a designated doctor impairment evaluation. (*Id*. at 316-320.) He complained of severe pain, tightness and discomfort in his lower back with a deep, sharp, stabbing, and aching sensation. (*Id*. at 316.) He also had some weakness, soreness, and stiffness in his lower back. (*Id*.) Examination revealed limited range of motion in his lumbar spine, positive straight leg raises on the left, positive Braggard's and Bechterew's tests on the left, absent reflexes in the right Achilles and Patellar tendons, and lumbar guarding. (*Id*. at 317-18.) Plaintiff was diagnosed with a lumbar strain. (*Id*. at 319.) Dr. Channing found that Plaintiff could not return to work because he would be a hazard on the job, and the job would further damage his condition. (*See id*. at 319.)

From August 2016 through September 2016, Plaintiff saw Dr. Berg for a bilateral L5 transforaminal epidural steroid injection and follow up visit. (*Id*. at 364, 479.) He had a stabbing and constant lower back that radiated down his legs, which he rated at a 9 on a scale of 10. (*Id*. at 364.) Dr. Berg recommended that Plaintiff see a surgeon for a possible lumbar fusion of L5-S1, second epidural steroid injection, or discogram. (*Id*. at 367.)

On March 15, 2017, State Agency Medical Consultant (SAMC) Jim Takach, M.D., completed a physical residual functional capacity (RFC) assessment based upon the medical evidence in the record. (*Id*. at 82-85.) He found that Plaintiff had the following exertional limitations: occasionally lift/carry 10 pounds; frequently lift/carry less than 10 pounds; stand and/or walk for a total of 2 hours; sit for about 6 hours in an 8-hour workday; push and pull unlimited weight (other than shown for lift and carry) with no restrictions on hand or foot controls; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally stoop; frequently balance, kneel, crouch, and crawl, with no manipulative limitations; and no visual, communicative, or environmental limitations. (*Id*. at 83-84.) Based on

3

his physical RFC, Plaintiff had the maximum sustained work capability for sedentary work. (*See id.* at 85.) The SAMC found that Plaintiff's alleged symptoms were partially consistent with the objective medical and other evidence in the record. (*Id.*)

On April 4, 2017, Plaintiff saw Dr. Channing for a designated doctor impairment evaluation. (*Id.* at 809.) He reported lower back pain of 9 on a scale of 10, with pain extending to his right and left legs in a nonspecific pattern. (*Id.* at 810.) His pain was aggravated by lifting, walking, standing, sitting, and squatting. (*Id.*) He had positive toe walk and straight leg raises bilaterally, and his strength in his lower extremities was reduced to a 4 out of 5. (*Id.* at 811-12.) There was "no palpatory evidence of joint fixation, articular and segmental dysfunction in the lumbo-sacral pelvic regions." (*Id.* at 812.) Dr. Channing diagnosed Plaintiff with a lumbar strain and found that he was able to return to work with restrictions. (*Id.*)

On April 11, 2017, Robert Holliday, M.D., completed a peer review of Plaintiff's medical records. (*Id.* at 859-872.) He found that Plaintiff's subjective extreme pain levels and reported decrease in function could not be explained objectively by the reported diagnostic findings and were related to psychosocial factors. (*Id.* at 868.)

On June 26, 2017, Plaintiff saw Dee McCrary, M.D., at Greenville Health Care Associates for evaluation. (*See id* at 744.) He reported being in constant pain since his accident at work. (*Id.*) Physical examination revealed positive tenderness in his left paraspinals, decreased range of motion to all planes, no signs of instability, no postural motor deficits, slowed gait, and positive straight leg raises bilaterally. (*Id.*) Dr. McCrary assessed Plaintiff with lower back pain, and recommended a "NS consult" and discogram to determine if that was the source of his persistent pain. (*Id.*)

4

From July 2017 through December 2017, Plaintiff followed up with Dr. McCrary monthly. (*Id.* at 688-95.) He reported lower back pain that was exacerbated by walking, coughing, driving, lifting, twisting, and physical activities. (*Id.* at 689, 691, 693.) Examination revealed positive tenderness in his left paraspinals, decreased range of motion, slowed gait, positive straight leg raises bilaterally, and weakness of his hip flexors. (*Id.*) Dr. McCrary assessed Plaintiff with lower back pain, noted that his condition had not changed, and directed him to continue taking his medication and return for a follow up visit. (*Id.* at 689-94.)

From January 2018 through February 2018, Plaintiff continued to see Dr. McCrary. (*Id.* at 838-842.) He complained of moderate lower back pain that was exacerbated by walking, coughing, driving, lifting, physical activities, and twisting. (*Id.* at 838, 841.) He was assessed with lower back pain, an annular tear of lumbar disc, and radiculitis. (*Id.* at 839, 842.) Dr. McCrary found that Plaintiff had not reached "MMI" and could not return to work, and he refilled his prescription and advised him to return for a follow up in 4 weeks. (*Id.* at 839.)

**C.**   **Hearing**

On April 12, 2018, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (*Id.* at 43-65.)  Plaintiff was represented by an attorney. (*Id.* at 43.)

   *1.*   *Plaintiff's Testimony*

Plaintiff testified that he had three children under the age of eighteen. (*See id.* at 51.)  His girlfriend drove him to the hearing because his license was suspended.  (*Id.* at 52.) He previously worked as a "clean up guy" at a solar panel company, where he cleaned up trash left by trucks or other companies. (*Id.*) He was required to be on his feet and walk around, but did not have to lift anything because he used a trash picker with a nail on the end of the stick. (*Id.* at 52-53.) He needed to sit down to take breaks every 10 or 15 minutes. (*Id.* at 53.) He worked for

5

approximately six weeks before being let go because he couldn't perform his job duties. (*Id*.)

Plaintiff believed that his back injury prevented him from working. (*Id*. at 54.) He injured his back at work in April 2016, when he tried to remove a quarter rod that had gotten stuck in a shot blast machine. (*Id*.) When he pulled on the machine to free the rod, he felt "a sharp pain in [his] back, and [he] immediately went straight to [his] knees." (*Id*.) His injury worsened over time. (*Id*.) He tried physical therapy and steroid injections; he was told he needed a discogram or surgery but couldn't afford the treatment because of insurance issues. (*See id*. at 55-56.)

Plaintiff testified that he could not sit for more than an hour and a half to two hours because his back hurt, could stand for 30 minutes at a time, had difficulty walking, and could lift 15 to 20 pounds. (*Id*. at 56.) He could lift a gallon of milk and occasionally lift a few bags of groceries. (*Id*. at 57.) Two to three times a week he had lower back pain that radiated down his left leg, and he estimated that four days a week his pain was at a 9 on a scale of 10. (*Id*. at 57-58.) He took Tramadol and Hydrocodone to help with the pain. (*Id*. at 58.)

On a typical day he made his bed, sat on the porch, and tried to help his stepmom with little things around the house. (*Id*. at 59.) He only slept four to five hours a night because of his back pain. (*See id*.) He could sometimes go to the grocery store, but he could not walk around the store without his girlfriend's help. (*Id*.) He couldn't stand long enough to wash more than one dish, but he could sometimes cook for himself. (*Id*. at 60.) He could not work a sedentary job because he could not sit for long periods without having to stand up. (*Id*. at 61.)

   2.   *VE's Testimony*

The VE considered a hypothetical individual with the same age and education as Plaintiff with no past work experience who could lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk continuously for 30 minutes, for a total of two hours during

6

an eight-hour work day; and sit continuously for two hours, for a total of six hours in an eight-hour work day. (*Id*. at 62.) Given these limitations, there was work existing in the national economy that he could perform at the sedentary level with a SVP of two. (*Id*.) He could work as a semi-conductor bonder, DOT 726.685-066 (sedentary, SVP-2), with approximately 22,000 jobs nationally and 1,200 jobs in Texas; addresser, DOT 726.685.066 (sedentary, SVP-2) with approximately 8,200 jobs nationally and 181 jobs in Texas; and food & beverage order clerk (sedentary, SVP-2), DOT 209.587-010, with approximately 20,00 jobs nationally and 1,000 jobs in Texas. (*Id*.)

The VE considered a second hypothetical individual with the additional limitation of lifting and carrying a maximum of 10 pounds occasionally. (*Id*.) The hypothetical individual would be able to perform the three sedentary occupations listed in the first hypothetical. (*Id*. at 63.) Although the DOT does not address the continuous period that a worker must sustain standing, walking or sitting, the VE relied on her vocational field experience, education and training to determine that the three named occupations were within the hypothetical limitations of 30 minutes of continuous standing, walking, and sitting. (*Id*.) Her testimony was consistent with the DOT. (*See id*.)

In response to questioning from Plaintiff's Attorney, the VE testified that an individual who was off task for 20 percent of the workday would not be able to sustain employment. (*Id*. at 63-64.) A hypothetical individual who missed two days of work per month could not sustain employment. (*Id*. at 64.)

D. **ALJ's Findings**

The ALJ issued a decision denying benefits on October 11, 2018. (*Id*. at 31.)  At step one, she found that Plaintiff had met the insured status requirements through September 30, 2018, and

7

had not engaged in substantial gainful activity since the alleged onset date of April 4, 2016. (*Id.* at 24.) At step two, the ALJ found that he had the following severe impairments: chronic back strain and obesity. (*Id.*) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the social security regulations. (*Id.* at 25.)

Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, stand and/or walk continuously for 30 minutes for a total of two hours, and sit continuously for two hours for a total of six hours in an eight-hour workday. (*Id.*) At step four, the ALJ applied the expedited process provided in the social security regulations and deferred any finding regarding Plaintiff's ability to perform past relevant work. (*Id.* at 29.) At step five, the ALJ found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that he was not disabled whether or not he had transferable job skills, but considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.*) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from April 4, 2016, through the date of the decision. (*Id.* at 30.)

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See Id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

    1.    An individual who is working and engaging in substantial gainful activity

>     will not be found disabled regardless of medical findings.
>
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work,
>    other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. ISSUES FOR REVIEW

Plaintiff presents two issues for review:

> 1. [Whether] the VE's testimony [] provide[s] substantial evidence to support the ALJ's finding that there are jobs existing in significant numbers that [Plaintiff] can perform.
>
> 2. [Whether] [t]he ALJ erred in evaluating the credibility of [Plaintiff's] subjective testimony.

(doc. 20 at 1.)

### A. Significant Number of Jobs

Plaintiff argues that the "VE's testimony does not provide substantial evidence to support the ALJ's finding that there are jobs existing in significant numbers that [he] can perform." (doc. 20 at 11.)

At step five of the sequential review process, it is the Commissioner's burden to show that a claimant is capable of performing other gainful employment in the national economy. *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(a)(4)(i). According to the Code of Federal Regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). It is the Commissioner's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. 20 C.F.R. § 404.1520(a)(4)(i); *Greenspan*, 38 F.3d at 236. Once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga*, 810 F.2d at 1302).

To establish that work exists for a claimant in significant numbers, an ALJ relies on the

testimony of a VE in response to hypothetical questions[3] or other similar evidence, or on the Medical-Vocational Guidelines promulgated to guide this determination, often referred to as "the Grids."[4] *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008). An ALJ may rely exclusively on the Grids if the impairments are solely exertional,[5] or if the nonexertional impairments do not sufficiently or significantly affect the RFC to determine whether there is other work available that the claimant can perform. *Newton*, 209 F.3d at 458 (if the nonexertional impairments do not *sufficiently* affect the RFC); *Fraga*, 810 F.2d at 1304) (if the nonexertional impairments do not *significantly* affect the RFC). If the claimant suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments, then the ALJ must rely on the testimony of a VE or other similar evidence to establish that such jobs exist in the economy. *Id*.

Here, the ALJ specifically noted that she had asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience," and RFC. (*See* doc. 12-1 at 30.) The VE testified that given Plaintiff's limitations, there were three

---

[3] "The ALJ relies on VE testimony in response to a hypothetical question because the VE 'is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.' " *Benton ex rel. Benton v. Astrue*, 3:12-CV-874-D, 2012 WL 5451819, at *7 (N.D. Tex. Nov. 8, 2012) (quoting *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)).

[4] The Grids are divided into age categories, and the determination of whether an individual is presumptively disabled differs depending upon the age category and other factors. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[5] Under the Social Security regulations, impairments are either exertional or nonexertional. Impairments are classified as exertional if they affect the claimant's ability to meet the strength demands of jobs. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. All other impairments are classified as nonexertional. *See Holiday v. Barnhart*, 460 F. Supp. 2d 790, 806 (S.D. Tex. 2006) (citing *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) and 20 C.F.R. § 404.1569(a)); *see also* Social Security Ruling (SSR) 96–9P (1996), 1996 WL 374185, at *5 ("[A] nonexertional limitation is an impairment-caused limitation affecting such capacities as *mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions* are also considered to be nonexertional." (emphasis original)).

12

sedentary jobs that existed in significant numbers in the national economy that he could perform, i.e., semi-conductor bonder, DOT 726.685-066 (sedentary, SVP-2), with approximately 22,000 jobs nationally and 1,200 jobs in Texas; addresser, DOT 726.685.066 (sedentary, SVP-2) with approximately 8,200 jobs nationally and 181 jobs in Texas; and food & beverage order clerk (sedentary, SVP-2), DOT 209.587-010, with approximately 20,00 jobs nationally and 1,000 jobs in Texas. (*Id*. at 62.) Plaintiff failed to challenge the VE's testimony on cross-examination at the hearing or to counter with other evidence. *See Stacey R. M. v. Berryhill*, No. 3:17-CV-2287-N-BN, 2018 WL 3803860, at *11 (N.D. Tex. July 23, 2018), *report and recommendation adopted*, No. 3:17-CV-2287-N-BN, 2018 WL 3769876 (N.D. Tex. Aug. 9, 2018) (citing *Wilson v. Berryhill*, No. 3:16-cv-71-DPJ-LRA, 2017 WL 5056420, at *6 (S.D. Miss. June 19, 2017)) (noting the plaintiff's failure to dispute the accuracy of the VE's testimony, and holding that the ALJ did not err in relying on the VE's testimony that the plaintiff could perform the work of an address clerk and that such jobs existed in the national economy). The ALJ found that based on the VE's testimony, and considering his age, education, work experience, and RFC, Plaintiff was "capable of making successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 30.)

The VE's testimony was sufficient to meet the Commissioner's burden. *See Gaspard*, 609 F. Supp. 2d at 617 ("The Commissioner's burden at Step 5 of the sequential evaluation process ... is satisfied by showing the existence of *only one job* with a significant number of available positions that the claimant can perform.") (emphasis in original) (citing *Evans v. Chater*, 55 F.3d 530, 532-33 (10th Cir. 1995)). Because the ALJ relied on the VE's testimony that jobs "exist in significant numbers in the national economy that [Plaintiff] can perform," her finding is supported by substantial evidence. *See* 20 C.F.R. § 416.966(a) ("[W]ork exists in the

13

national economy when it exists in significant numbers either in the region where you live or in several other regions of the country."); *see also*, *e.g.*, *Gaspard*, 609 F. Supp. 2d at 619 (stating that various appellate courts have found 500, 650-900, and 1,400 jobs in a state to be sufficient to constitute a significant number of jobs); *Duncan v. Saul*, No. 3:19-CV-1333-S-BH, 2020 WL 6120472, at *15 n. 12 (N.D. Tex. Sept. 10, 2020), *report and recommendation adopted*, No. 3:19-CV-1333-S-BH, 2020 WL 6064359 (N.D. Tex. Oct. 14, 2020) (the VE's testimony that there were 25,000 jobs nationally for inspector, hand packager, as well as 35,000 jobs nationally for bakery worker jobs available was sufficient to constitute substantial evidence); *Mercer v. Halter*, No. 4:00-CV-1257-BE, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (concluding that 500 jobs in Texas and 5,000 jobs in the national economy constituted a significant number of jobs). Remand is not warranted on this issue.

**B.    Subjective Complaints**

Plaintiff argues that the "ALJ erred in evaluating the credibility of [his] subjective testimony." (doc. 20 at 14.)

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3P, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).[6] First, the ALJ must consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce

---

[6] Effective March 2017, the Social Security Administration issued Social Security Ruling 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304.  It instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017).  While SSR 16-3p explicitly supersedes SSR 96-7P, "it is evident that the change brought about by SSR 16-3p was mostly semantic." *Id.* at *7 (collecting cases).

the alleged symptoms. *See* SSR 16-3P, 2017 WL 5180304, at *3-4. Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *See id.* at *4-5. The ALJ is to consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect. *See id.* at *5-7. The ALJ must also consider a non-exclusive list of seven relevant factors in evaluating the intensity, persistence, and limiting effect's of a claimant's symptoms:

> 1. the claimant's daily activities;
>
> 2. the location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. factors that precipitate and aggravate symptoms;
>
> 4. the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;
>
> 5. treatment, other than medication, for relief of pain or other symptoms;
>
> 6. measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back);
>
> 7. and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although the ALJ must give specific reasons for making this determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). Moreover, the Fifth Circuit has explicitly

15

rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's credibility because she "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18.

Here, the ALJ noted the proper standard and two-step analysis for evaluating subjective complaints and symptoms based on a consideration of the entire case record. (*See* doc. 12-1 at 25.) She then considered Plaintiff's hearing testimony, including his general complaints about his radiating back pain and his claim that he could sit for one and a half to two hours, stand for 30 minutes at a time, walk slowly, and lift 15 to 20 pounds. (*Id.* at 26.) She reviewed his medical records, the diagnoses of his doctors and their related treatment, and noted that he performed light household duties that were consistent with her standing/walking assessment. (*Id.* at 26-28.) She also noted that he received only conservative treatment for his back and did not require inpatient hospitalization or urgent emergency room visits. (*Id.* at 29.) The ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "allegations of debilitation symptoms [were] not entirely consistent with the objective medical evidence and other evidence in the record." (*Id.* at 28.)

Plaintiff argues that the ALJ's finding that Plaintiff's subjective "allegations of disabling pain were not credible is not supported by substantial evidence." (doc. 20 at 15.) As discussed, however, the ALJ's analysis for evaluating subjective complaints and symptoms relied on the same evidence considered when determining Plaintiff's RFC. (*See* doc. 12-1 at 25-28.) She fully analyzed the treatment records, the medical opinions of his treating physicians and the SAMC,

Plaintiff's hearing testimony, and other non-medical evidence. (*Id.*) Although not in a formalistic fashion, the ALJ considered the factors for evaluating subjective complaints and symptoms and adequately explained her reasons for rejecting Plaintiff's subjective complaints, and there is substantial evidence to support her determination. *See Falco*, 27 F.3d at 164. Plaintiff has not shown that the ALJ erred in her analysis, particularly because her decision shows that she properly considered the record as a whole, and it is sufficiently specific to show that the regulatory factors were considered. *See Prince*, 418 F. Supp. 2d at 871; *see also Lopez v. Astrue*, 854 F. Supp. 2d 415, 424-25 (N.D. Tex. 2012) (finding that the ALJ properly evaluated the plaintiff's credibility by expressly acknowledging that he "experienced some level of pain and functional loss, but concluded that [the] plaintiff's subjective complaints of pain were out of proportion to the objective medical evidence"). Moreover, the ALJ's evaluation of subjective complaints is entitled to judicial deference. *See Carrier*, 944 F.2d at 247. Because there is substantial evidence to support the ALJ's analysis of Plaintiff's subjective symptoms, remand is not required on this issue. *See Falco*, 27 F.3d at 164; *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011) (finding ALJ's analysis of plaintiff's subjective complaints supported by his discussion of medical records and opinions).

## IV.  CONCLUSION

The Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, on this **9**th day of November, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17